UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JOHN LAU,

                    Petitioner,

     -against-

GLENN S. GOORD, COMMISSIONER OF
NEW YORK STATE DEPARTMENT OF
CORRECTIONAL SERVICES; ELIOT L.
SPITZER, THE ATTORNEY GENERAL OF
THE STATE OF NEW YORK; and TODD
CRAIG, WARDEN, FCI RAY BROOK,

                    Respondents.[1]
----------------------------------------------------------X

**REPORT & RECOMMENDATION**

06-CV-1419 (SLT) (RER)

**RAMON E. REYES, JR., U.S.M.J.:**

      The Honorable Sandra L. Townes referred John Lau's ("Petitioner's") petition for a writ of habeas corpus to me for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1). Petitioner claims that his constitutional rights were violated because the trial court's supplemental jury charge coerced a guilty verdict. For the following reasons, I respectfully recommend that the petition be denied.

## BACKGROUND

**I.    Facts**

      Petitioner was charged with the murders of Alessandro Barone ("Mr. Barone") and Liane Barone ("Mrs. Barone"). Petitioner was indicted on two counts of first degree murder as part of the same criminal transaction, two counts of first degree murder to prevent witness testimony,

---

[1] Only Mr. Goord and the Attorney General are represented by the District Attorney of Kings County. Respondent Affidavit in Opposition to Petition for a Writ of Habeas Corpus ("Resp. Aff.") at 1.

and two counts of second degree murder. Petitioner was also indicted on two counts of second degree murder under a depraved indifference theory. The prosecution contended that petitioner murdered Mr. and Mrs. Barone in order to prevent them from revealing a fraudulent land sale by petitioner.[2]

A jury trial commenced on October 12, 2001 and the case was submitted to the jury on October 31, 2001. After two days of deliberations the jury reached a verdict. The jury acquitted petitioner of counts one and two, first degree murder as part of the same criminal transaction. The jury found petitioner guilty of counts three and four, first degree murder to prevent witness testimony. The jury acquitted petitioner of counts five and six, second degree murder.

After the verdict was rendered, the trial court excused the jury and noted that there was an inconsistency in the verdict. Tr. 1369.[3] The trial court stated it should have originally charged the jury in the alternative with instructions not to consider second degree murder if it rendered a guilty verdict of first degree murder. Tr. 169-70. The prosecutor agreed and suggested that the court charge in the alternative. Tr. 1371. The trial court also stated that the jury should have the option of "either acquitting him of everything or convicting him of counts

---

[2] In February or March of 1985, petitioner sold Mr. Barone a plot of land located in Port Charlotte, Florida for $18,500 which was to be paid off in installments. When Mr. Barone could no longer make the monthly payments on the land, petitioner told Mr. Barone he would loan him the balance due on the property. In actuality, petitioner let Mr. Barone default on the property and Mr. Barone's equity in the property was forfeited. In 1987, petitioner, acting as a broker for Mr. Barone, sold the property to James Leong and his wife for $21,500 although neither petitioner nor Barone were owners. The Leongs made a down payment of $2,150 and monthly payments of $220 until early 1996 when they indicated that they wished to pay the balance due on the property and take possession. The Leongs requested a copy of the deed to the property and discovered that Mr. Barone did not have title to the property. A week or so before he and his wife were killed, Mr. Barone informed petitioner that the Leongs had threatened legal action.

[3] Numbers preceded by "Tr." refer to pages in the trial transcript.

2

?." Tr. 1371. Defense counsel pointed out that the acquittal of counts one and two were consistent with an acquittal of counts five and six. Tr. 1371.

The trial court advised counsel that it would charge in the alternative and have the jury correct the verdict sheet over defense counsel's objection. Tr. 1371-72. Once the jury returned to the courtroom, the judge charged the following:

> Ladies and gentlemen, in reviewing your verdict, it is apparent, that there is a logical inconsistency concerning counts five and six. If it is your verdict that the defendant is guilty of counts three and four, counts five and six would seem to indicate that that too should be a conviction.
>
> On the other hand, given the fact that you found him not guilty of counts one and two then finding him not guilty of five and six would be consistent.
>
> What I would like you to do, I know it is late, is to go back and I want to just rephrase what happens at the end of counts three and four. If in fact your verdict is unanimous as to counts three and four and that the defendant is in fact guilty, you need not consider the lesser offenses of counts five and six, if that is in fact your verdict. And that would obviate the need of the inconsistency, and I'm not sure exactly how you came to your decision on it, but the fact is that what counts three and four are, are really a higher degree of counts five and six. What's happening there is an intentional murder plus something else happens, the motive part that makes it into a murder one. So, it becomes inconsistent and I think I probably should have charged you in this fashion: That you need not consider counts five and six unless you acquitted on all the other accounts. So, if you convicted on any of those counts, you need not consider five and six, and I'm just going to have a new verdict sheet. I'm going to send it back in and you will discuss it.
>
> If that is in fact what your verdict is then you will come back out and you will redo this. I'm sorry for the confusion.

Tr. 1372-73. After the jury was excused, defense counsel objected to the court's charge stating that the court did not effectively clarify the problem with the verdict or communicate its intent to the jury. Tr. 1374.

3

The jury returned fifteen minutes later and rendered their verdict. Tr. 1375. The jury again acquitted petitioner of two counts of first degree murder as part of the same criminal transaction. The jury also convicted petitioner again of two counts of first degree murder to prevent the witnesses from testifying. N.Y. Penal Law § 120.27(1)(a)(V). The jury foreperson stated that the jury did not consider the second degree murder -- counts five and six. Tr. 1376. On November 30, 2001, petitioner was sentenced to concurrent sentences of life imprisonment without the possibility of parole on both counts.

## II.     Procedural History

### A.     Direct Appeal

On December 7, 2001, petitioner appealed his conviction, arguing: (1) that the jury rendered a repugnant verdict, convicting him of first degree murder while at the same time acquitting him of the lesser included offense of second degree murder, that the court failed to order the jury to reconsider both verdicts and essentially directed a verdict of guilt on the first degree murder charge; (2) that the court deprived him of a fair trial by failing to instruct the jury that the circumstantial evidence must exclude "beyond a reasonable doubt" every reasonable hypothesis of innocence; and (3) ineffective assistance of counsel for failure to challenge the fingerprint expert's "surprising" testimony. On October 4, 2004, the Appellate Division affirmed the judgment stating that the evidence of petitioner's guilt was sufficient, and that all of his other claims were without merit. *See People v. Lau*, 11 A.D.3d 482 (2d Dep't 2004).

On November 15, 2004, petitioner sought leave to appeal to the New York Court of Appeals raising the same claims he raised in the Appellate Division. Petitioner also argued that his conviction of first degree murder in order to prevent witness testimony against him was

repugnant to the acquittal of first degree murder under the same criminal transaction theory.  On December 22, 2004, petitioner filed a follow-up letter to his leave application in order to "highlight the issue resulting from the trial court's coercive supplemental instructions given after the jury rendered a repugnant verdict."  Petitioner's Letter to the N.Y. Court of Appeals dated 12/22/04.  Petitioner's application for leave to appeal was denied without opinion on January 19, 2005.  *See People v. Lau*, 4 N.Y.3d 765 (2005).

**B.**     **Instant Habeas Petition**

On or about March 28, 2006, petitioner filed the instant petition for a writ of habeas corpus.  Docket Entry 1.  In his petition, petitioner asserts only one claim: that "[t]he court deprived petitioner of a jury verdict, where the jury rendered a repugnant verdict under New York law and the court's supplemental charge coerced and essentially directed a verdict of guilt of first-degree murder."  Petition For a Writ of Habeas Corpus at 6.  Respondent opposes the petition on the grounds that petitioner failed to properly exhaust his claim in State court, and that petitioner's claim is meritless.  Resp. Aff. ¶ 7.

## DISCUSSION

**I.**     **State Court Exhaustion**

An application for a writ of habeas corpus may not be granted unless the petitioner has exhausted the remedies available in the courts of the state in which the petitioner was convicted.  28 U.S.C. § 2254(b)(1)(A).  The exhaustion requirement applies to every federal habeas claim alleged by the petitioner.  *See Caballero v. Keane*, 42 F.3d 738, 740 (2d Cir. 1994).  State prisoners are required to "give state courts a *fair* opportunity to act on their claims" by "invoking

one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 844, 845 (1999) (citing 28 U.S.C. § 2254(c)) (additional citations omitted).

The exhaustion requirement is not met until the federal claim has been "fairly presented" to the highest court of the state. *Picard v. Connor*, 404 U.S. 270, 275 (1971). A claim may be "fairly presented" to the state courts if "the legal basis of the claim made in state court was the 'substantial equivalent' of that of the habeas claim." *Daye v. Att'y Gen. of N.Y.*, 696 F.2d 186, 192 (2d Cir. 1982) (quoting *Picard*, 404 U.S. at 278) (additional citations omitted). Essentially, "the nature or the presentation of the claim must have been likely to alert the court to the claim's federal nature." *Id.* A habeas petitioner may "fairly present" his or her federal claims by one of the following ways: (1) reliance on pertinent federal cases employing constitutional analysis; (2) reliance on state cases employing constitutional analysis in like fact situations; (3) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; and (4) allegation of a pattern of facts that is well within the mainstream of constitutional litigation. *Daye*, 696 F.2d at 194.

Respondent argues that petitioner's claim has not been exhausted because it was raised only as a violation of New York state law and petitioner's brief "relied upon New York state cases, none of which employed substantial federal constitutional analysis." Respondent's Memorandum of Law in Opposition at 56 ("Resp. Memo"). Petitioner asserts that the state court was alerted to the constitutional nature of his claim by his references to a violation of a constitutionally protected right, his reliance on Supreme Court precedent as well as a state case citing to a Supreme Court case. Petitioner's Memorandum of Law in Reply to Respondent's

Return at 7-8 ("Pet'r Reply"). Petitioner further asserts that the fact pattern underlying his claim is well-within the mainstream of constitutional litigation. *Id.*

In his state court motion, petitioner argued that the court deprived him of a jury verdict by essentially directing a guilty verdict on the first degree murder charge by failing to direct the jury to reconsider both verdicts. Petitioner's Brief to the Appellate Division at 29 (Pet'r App. Br."). Petitioner asserted that the trial court erred by failing to apply New York Criminal Procedure Law § 310.50(2) which governs the procedure for dealing with repugnant verdicts. *Id.* This failure, petitioner argued, resulted in an "unconstitutionally defective verdict." *Id.* Petitioner then cited *Sullivan v. Louisiana*, 508 U.S. 275 (1993), in which the Supreme Court stated "[t]he Sixth Amendment. . .includes, of course, as its most important element, the right to have a jury rather than a judge reach the requisite finding of 'guilty.'" *Id.* at 277. Furthermore, in his reply brief, petitioner argued that the trial court's second charge to the jury coerced a guilty verdict thereby usurping the jury's function. Petitioner's Reply Brief to the Appellate Division at 4 ("Pet'r Reply Br."). In support, petitioner cited to *Connecticut v. Johnson*, 460 U.S. 73 (1983), which prohibits a directed verdict in criminal cases. Thus, I find that the state court should have been on notice of petitioner's federal claim and petitioner's claim is fully exhausted.[4]

---

[4] Even were petitioner's claim not deemed exhausted, a district court in its discretion may deny a habeas petition on the merits even if the petition contains unexhausted claims. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state.").

## II. Merits of Petitioner's Claim

### A. Standard of Review

A federal court may review a writ of habeas corpus by a state prisoner only if such prisoner is in custody in violation of the Constitution or laws or treaties of the United States.[5] 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts are to apply a deferential standard of review to habeas petitions by state prisoners. A federal court may grant a writ of habeas corpus on a claim that was adjudicated on the merits in state court only if the adjudication of the claim "resulted in a decision that was (1) contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).

The two clauses of subsection (1) have "independent meaning." *Williams v. Taylor*, 529 U.S. 362, 364 (2000). Under the second clause, "the petitioner need not show that all reasonable jurists would agree that a state court determination is incorrect in order for it to be unreasonable." *Yung v. Walker*, 341 F.3d 104, 109-10 (2d Cir. 2003). Rather, a state court's interpretation of federal law should be examined using a standard of objective reasonableness. *See id.* at 110. Thus, habeas relief may be granted if a state court decision "correctly identifies

---

[5] Petitioner's concurrent life sentences for murder are to run consecutive to the ten year sentence he is currently serving pursuant to his federal mail fraud conviction rendered in the Eastern District of New York. *See People v. Lau*, 11 A.D. 3d 482 (2d Dep't 2004), *lv. denied*, 4 N.Y. 3d (2005). Although petitioner is not currently incarcerated pursuant to his state murder conviction he has satisfied the "in custody" requirement. *See Peyton v. Rowe*, 391 U.S. 54 (1968) (a prisoner serving consecutive sentences is in "custody" under any of the sentences for purposes of the habeas corpus statute).

8

the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407-08.

In reviewing findings of fact under subsection (2), a federal court must determine whether the state court's determinations were unreasonable in light of the evidence presented during the state court proceeding. 28 U.S.C. § 2254(d)(2). A state court's determinations of fact shall be "presumed to be correct" and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

A state court adjudicates a claim on the merits when it "(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment . . . even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Serrano v. Fischer*, 412 F.3d 292, 296 (2d Cir. 2005) (quoting *Gutierrez v. McGinnis*, 389 F.3d 300, 304 (2d Cir. 2004)). Petitioner's claim was raised on direct appeal and rejected by the Appellate Division as lacking merit. *Lau*, 11 A.D.3d 482. As petitioner's claim has been adjudicated on the merits in state courts, the deferential standard of review set forth in AEDPA is appropriate.

**B.      Analysis**

Petitioner argues that the trial court's supplemental jury charge was erroneous because (1) it did not explain the defect in the original verdict and (2) it failed to instruct the jury to reconsider both its guilty verdict of first degree murder to prevent witness testimony and its acquittal of second degree murder in accordance with N.Y. Crim. P. Law § 310.50(2). Petitioner's Memorandum of Law in Support of Petition at 32, 37-38 ("Pet'r Memo"). Petitioner further argues that the failure to instruct the jury to reconsider both verdicts essentially directed a guilty verdict on first degree murder to prevent witness testimony in violation of petitioner's

9

constitutional rights. *Id.* at 32. Respondent, in opposition, argues that the trial court properly directed the jury to reconsider and clarify its verdict in the form of an alternative charge. Resp. Memo at 59-60.

"In order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law." *Daniel v. Greiner*, No. 00 CV 4857, 2003 WL 22284165, at *6 (E.D.N.Y. Aug. 19, 2003) (citing *Casillas v. Scully*, 769 F.2d 60, 63 (2d Cir. 1985); *see also Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (federal habeas corpus relief does not lie for mere errors of state law); *Davis v. Strack,* 270 F.3d 111, 123 (2d Cir. 2001); *Blazic v. Henderson*, 900 F.2d 534, 541 (2d Cir. 1990). A reviewing court must view the charge in its total context, *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973), and determine whether the purportedly improper instructions "by [themselves] so infected the entire trial that the resulting conviction violates" the Constitution. *Strack,* 270 F.3d at 123 (internal quotations omitted); *Wright v. Smith,* 569 F.2d 1188, 1191 (2d Cir. 1978). A constitutional error, however, is harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 627 (1995).

1. **The Trial Judge Adequately Explained the Jury's Initial Defective Verdict**

Petitioner argues that the jury's initial inconsistent verdict indicated that it was confused as to the elements of the crimes. Pet'r Memo at 37. Thus, petitioner argues, the trial court should have reinstructed the jury that both first degree murder and second degree murder contain the elements of intent and causation. *Id.* Petitioner contends that the trial court also should have

told the jury that they could not convict petitioner of first or second degree murder if one of these elements was not proven beyond a reasonable doubt. *Id.* at 37-38.

Section 310.50(2) of the N.Y. Crim. P. Law provides in pertinent part, "[i]f the jury renders a verdict . . . legally defective, the court must explain the defect or error and must direct the jury to reconsider such verdict, to resume its deliberation for such purpose, and to render a proper verdict." Whether a verdict is legally defective "is determined by examining the charge to see the essential elements of each count, as described by the trial court, and determining whether the jury's findings on those elements can be reconciled." *People v. Loughlin*, 76 N.Y.2d 804, 806 (1990); *see also People v. Martinez*, 624 N.Y.S.2d 783, 785-86 (1995) ("Verdicts are defective for repugnancy when they represent different findings on the same element."). Moreover, "[a] determination of whether a verdict is repugnant is based solely on a review of the trial court's charge regardless of its accuracy." *People v. Green*, 71 N.Y.2d 1006, 1008 (1988).

Here, the jury's initial verdict was indeed defective. The trial court originally instructed the jury, properly, that intent and causation are essential elements of both first degree and second degree murder.[6] Therefore, it was inconsistent for the jury to convict petitioner of first degree murder to prevent witness testimony and at the same time acquit him of second degree intentional murder, which has no special intent element. *See Martinez*, 624 N.Y.S.2d at 785-86 ("when a not-guilty verdict conclusively negates an essential element of a crime upon which a

---

[6] For counts three and four, the trial court instructed the jury that the prosecution must prove that petitioner caused the deaths of Alessandro and Liane Barone with the intent to cause their deaths for the purpose of preventing them from testifying against him in a criminal proceeding. Tr. 1326-27. For counts five and six, the trial court instructed the jury that the prosecution must prove that petitioner caused the deaths of Alessandro and Liane Barone with the intent to cause their deaths. Tr. 1328-29.

11

guilty verdict is returned, the verdicts are repugnant and legally defective."). In other words, in this context, second degree murder is a lesser included offense of first degree murder to prevent witness testimony. *See* N.Y. Crim. P. Law § 1.20(37); *People v. Miller*, 6 N.Y.3d 295, 301 (2006).[7] Thus, the trial court was required to explain this defect to the jury.

While the trial court's supplemental charge did not contain all of the corrective language petitioner argues it should have, this Court is satisfied that the supplemental charge adequately explained the defect in the jury's original verdict. The trial court brought the jury back in the court room and said that there was "a logical inconsistency concerning counts five and six." Tr. 1372. He told the jury that if its verdict was guilty as to first degree murder to prevent witness testimony (counts three and four) then the second degree murder counts (five and six) should also be a conviction. Tr. 1372. He also told the jury that its acquittal of counts one and two were consistent with its acquittal on counts five and six. Tr. 1372. He then explained "counts three and four are really a higher degree of counts five and six. What's happening there is an intentional murder plus something else happens, the motive part that makes it into a murder-one." Tr. 1373.

As second degree murder is a lesser included offense of first degree murder to prevent witness testimony, the trial court thus properly informed the jury that first degree murder has the same elements as second degree murder plus an additional element of intent to prevent a witness from testifying, and that they could not convict petitioner of first degree murder while acquitting him of second degree murder, which has no additional intent element. Moreover, in its original

---

[7] Pursuant to N.Y. Crim. P. Law § 1.20(37), "[w]hen it is impossible to commit a particular crime without concomitantly committing, by the same conduct, another offense of lesser grade or degree, the latter is, with respect to the former, 'a lesser included offense.'"

instruction the trial judge clearly defined the requisite elements and instructed the jury that it must find that the prosecution proved each element beyond a reasonable doubt in order to convict. Tr. 1322-29. Thus, the original charge coupled with the supplemental charge sufficiently instructed the jury on all of the requisite elements.

        2.        **<u>Any Error in Resubmitting Both Verdicts Was Harmless</u>**

Petitioner also argues that the trial court failed to resubmit both verdicts to the jury for its reconsideration because it never instructed the jury to reconsider its acquittal of second degree murder. Pet'r Memo at 39 ("Simply, the jury was never told to reconsider second degree murder and resolve the inconsistency between the verdicts returned on the two charges."). Petitioner argues further that by failing to resubmit all verdicts to the jury, the supplemental charge essentially coerced a guilty verdict on the first degree murder charge, thereby depriving petitioner of a fair trial. *Id.* Respondent, in opposition, argues that the trial court properly resubmitted the charges in the form of an alternative charge. Resp. Memo at 59. Respondent also refutes, of course, that the supplemental charge was coercive. I have reviewed both the original and supplemental charges carefully and find that the jury was sufficiently instructed that it could have rendered either a guilty verdict or an acquittal and thus, the charges as a whole were not coercive.

Upon explaining the defect in the jury's original verdict, the trial court charged the jury in the alternative. The trial court instructed the jury that if it found petitioner guilty of first degree murder to prevent witness testimony (counts three and four) it need not consider second degree murder (counts five and six). Tr. 1373. The trial court further instructed the jury that it need not consider second degree murder if it acquitted petitioner on all other counts. The

13

somewhat vague wording of the supplemental charge lends credence to petitioner's claim that the trial court failed to resubmit both verdicts for the jury's reconsideration. At no point during the supplemental charge did the trial judge specifically instruct the jury that it was to reconsider it's verdicts on all of the charges. Nevertheless, even assuming that the trial court resubmitted to the jury only the guilty verdict on counts three and four in violation of N.Y. Crim. P. Law § 310.50(2) the trial court's error does not rise to the level of a constitutional violation.

"[T]he principle that jurors may not be coerced into surrendering views conscientiously held is so clear as to require no elaboration." *Jenkins v. United States*, 380 U.S. 445, 446 (1965); *see also Smalls v. Batista*, 191 F.3d 272, 278 (2d Cir.1999) (a criminal defendant is entitled to an uncoerced jury verdict) (citing *Lowenfeld v. Phelps*, 484 U.S. 231, 241 (1988)). A trial court, therefore, must take care not to give a supplemental charge that coerces jurors to reach a verdict. The Second Circuit has recognized that "[c]oercion may be found when jurors are encouraged to abandon, without any principled reason, doubts that any juror conscientiously holds as to a defendant's guilt." *Smalls*, 191 F.3d at 279 (quoting *United States v. Melendez*, 60 F.3d 41, 51 (2d Cir.1995)).

In the instant case, the jurors were not encouraged to abandon their doubts, if any, regarding petitioner's guilt. The supplemental charge instructed the jury to clarify its verdict, whatever that may be, rather than reach any particular verdict. The trial court instructed the jury that it need not consider counts five and six unless it *either* convicted petitioner on any other counts or acquitted him of the higher counts. Thus, the jury was informed that they had two choices: a guilty verdict and an acquittal on any one of the charges. *See People v. Jones*, 165

A.D.2d 695 (1990) (supplemental charge proper where it did not direct jury to find defendant guilty of both counts).

In explaining the defect in the original verdict, the trial court informed the jury that an acquittal of counts one and two was consistent with an acquittal of counts five and six. The jury therefore knew that the inconsistency lay in the guilty verdict on counts three and four. Contrary to petitioner's claim a guilty verdict was not "a foregone conclusion," Pet'r Memo at 38, because the jury could have changed the guilty verdict on counts three and four to an acquittal. Also weighing against finding a coerced verdict is the jury's discriminating result of an acquittal of counts one and two and conviction on counts three and four. *See, e.g., United States v. Rabinowitz*, 578 F.2d 910, 911-12 (E.D.N.Y. 1978).

Viewing the charge as a whole, it cannot be said that the purportedly improper instructions "by [themselves] so infected the entire trial that the resulting conviction violates" the Constitution. *Strack*, 270 F.3d at 123; *see also Chalmer v. Mitchell*, 73 F.3d 1262, 1267 (1996) ("Sometimes, erroneous portions of the jury instructions are offset when considered in context or explained by the trial court in later sections of the instruction." (citations omitted)). Moreover, in its original instruction, the trial court more than adequately instructed the jury on the elements of the charged crimes, Tr. 1320-1329, and that the prosecution bore the burden of proving every element of the crimes before petitioner could be convicted, Tr. 1311 - 1314. The trial court also instructed the jury that only the jury had the power to determine petitioner's guilt, and that although the members should keep an open mind while deliberating, they should not surrender their convictions in order to reach an agreement. Tr. 1314, 1331.

Importantly, petitioner did not object to any impropriety in the original charge which resulted in a conviction of first degree murder to prevent witness testimony. Following the supplemental charge, the jury rendered the exact same guilty verdict of first degree murder as it did after the original charge. Petitioner's claim, therefore, that the supplemental charge coerced a guilty verdict that had already been rendered prior to the giving of the supplemental charge is simply implausible.

In sum, petitioner has failed to establish that he was deprived of a constitutional right when the judge erroneously resubmitted only the guilty verdict for the jury's reconsideration. *See Fama v. Commissioner of Correctional Services*, 69 F. Supp. 2d 388, 396 (1999) (petitioner must show "not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right [guaranteed] by the Fourteenth Amendment.") (internal citations omitted)). Therefore, the Appellate Division's decision to reject his claim was not contrary to, or involve an unreasonable application of, clearly established Supreme Court precedent.

## **CONCLUSION**

For the reasons discussed above, I respectfully recommend that the petition be denied in its entirety. Since petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability should not issue. *See* 28 U.S.C. § 2253(C)(2).

Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a copy to the undersigned by August 29, 2007. Any request for an extension of time to file objections must be made to the District Judge. Failure to file a timely objection to this Report generally waives any further judicial review. *DeLeon v. Strack*, 234 F.3d 84, 86 (2d Cir.

2000); *Spence v. Superintendent, Great Meadow Correctional Facility*, 219 F.3d 162, 174 (2d Cir. 2000). *See Thomas v. Arn*, 474 U.S. 140 (1985).

**Dated: August 2, 2007**
**Brooklyn, New York**

*Ramon E. Reyes, Jr.*
**Ramon E. Reyes, Jr.**
**United States Magistrate Judge**

cc:    Monica Jacobson, Esq.
       Attorney for Petitioner John Lau
       225 Broadway - Suite 1901
       New York, NY 10007

       Counsel for Respondent
       Thomas S. Burka, Esq.
       Assistant District Attorney
       Kings County District Attorney's Office
       350 Jay Street
       Brooklyn, New York 11201